UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT C. GUCCIONE,                       :
                                                 :        06 Civ. 492 (SHS)
                     Plaintiff,   :
                                               :        <u>OPINION & ORDER</u>
         -against-              :
                                                 :
MARC H. BELL, DANIEL C. STATON,    :
PENTHOUSE MEDIA GROUP, INC., CHARLES :
SAMEL, JASON GALANIS, DR. LUIS     :
ENRIQUE MOLINA GALEANA a/k/a       :
FERNANDO MOLINA, INTERNET BILLING  :
COMPANY, LLC, and PENTHOUSE        :
INTERNATIONAL, INC.,               :
                                               :
                     Defendants.   :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Robert Guccione filed the original complaint in this action on December 23, 2005 in New York Supreme Court.  The complaint lists 11 separate causes of action – all of which are pleaded pursuant to state law – including breach of contract, unjust enrichment, fraud and failure to pay severance.  Three of the defendants – Penthouse Media Group, Inc. ("PMG"), Marc H. Bell and Daniel C. Staton – removed the action to this Court, asserting that federal jurisdiction exists over Guccione's severance claim pursuant to both the Employee Retirement Income Security Act of 1974 ("ERISA") and the federal bankruptcy code.  Because Guccione's claim for severance is not governed by ERISA, and because the equities weigh heavily in favor of Guccione's claims being adjudicated in state, not federal, court, the case is remanded to New York state court pursuant to 28 U.S.C. § 1452(b).

I. Background

Guccione, the founder of Penthouse Magazine, alleges that as his former company, General Media, Inc. ("GMI"), slid into bankruptcy, several of his former partners and employees fraudulently froze him out of managing the company and lured him into making a series of financially disastrous transactions – and then fired him just after the bankruptcy plan was confirmed in October 2004, cut off payments they were obligated to make to him and sued him in bad faith in bankruptcy court.  (Compl. ¶¶ 1-80.)  Based on these allegations, the complaint asserts the following causes of action:

(1) Material breach of contract.  Guccione alleges that PMG (which is the successor to GMI) and Bell and Staton (who acquired PMG out of bankruptcy) breached an agreement to pay Guccione $500,000 per year for ten years and provide him with an assistant and a secretary in exchange for his support for Bell's favored bankruptcy reorganization plan.  (Id. ¶¶ 64, 81-87.)

(2) Fraud.  Guccione alleges that PMG, Bell and Staton fraudulently induced him to support Bell's bankruptcy reorganization plan by promising that PMG would engage Guccione as chairman emeritus for ten years at a salary of $500,000 per year, plus staff and benefits amounting to an additional $250,000 per year, without any intention of actually paying these amounts.  (Compl. ¶¶ 88-96.)

(3) Unjust enrichment, in that PMG, Bell and Staton have been unjustly enriched as a result of the wrongful actions alleged above.  (Compl. ¶¶ 97-100.)

(4) Promissory estoppel.  Guccione alleges that he detrimentally relied on promises by PMG, Bell and Staton that they would keep him on as chairman emeritus and honor GMI's severance plans.  (Compl. ¶¶ 101-105.)

(5) Failure to pay severance.  Guccione alleges that from its inception in 1967 through its filing for bankruptcy, GMI maintained a policy of providing severance in an amount equal to one month salary for every year that an employee worked for the company ten years or longer.  Guccione alleges that he voted in favor of Bell's bankruptcy reorganization plan in reliance on the severance policy being honored, but that immediately after confirmation, Bell and Staton terminated the severance plan and fired Guccione without paying any severance.  Guccione asserts that because he had been employed for 37 years at an annual salary of $500,000, he is owed severance of $1,541,667, plus interest.  (Compl. ¶¶ 106-116.)

(6) Breach of contract.  Guccione alleges that Charles Samel, a former employee, and Jason Galanis, a former consultant to GMI, breached an agreement that was to pay Guccione $1 million per year and provide him with continued access to the townhouse he was living in, or to provide housing valued at $20 million, or to pay him a single lump sum of $15 million, in exchange for his turning over certain trademarks and supporting Samel's reorganization plan.  (Compl. ¶¶ 55-56, 117-123.)

(7) Fraud.  Guccione alleges that in order to gain his support for Samel's reorganization plan, Samel, Galanis and a third defendant, Fernando Molina, made a number of false representations, including that they would pay Guccione $1 million per year and allow him to remain in the townhouse for the remainder of his life.  (Compl. ¶¶ 124-132.)

(8) Breach of fiduciary duty.  Guccione alleges that Samel and Galanis, who occupied positions of trust with Guccione and GMI, sold off assets without maintaining accurate records, falsely induced Guccione to guarantee a multi-million dollar "bridge" loan and forged Guccione's name on documents filed with the Securities and Exchange Commission.  (Compl. ¶¶ 133-142.)

(9) Unjust enrichment, in that Samel and Galanis have been unjustly enriched as a result of their allegedly improper conduct. (Compl. ¶¶ 143-146.)

(10) Promissory estoppel. Guccione alleges that he detrimentally relied on promises by Samel and Galanis concerning payments he would receive in the future and his continued right to live in the townhouse. (Compl. ¶¶ 147-151.)

(11) Conspiracy to defraud. Guccione alleges that Bell, Staton, Samel and Galanis have "joined forces" in a "massive conspiracy" to defraud Guccione of more than $10 million. (Compl. ¶¶ 152-158.)

After removing the case to federal court, defendants PMG, Bell and Staton filed an answer denying virtually all of Guccione's allegations and asserting 16 affirmative defenses, including that Guccione's claims are barred in whole or in part by the company's 2004 discharge in bankruptcy (Ans. ¶ 60) and that ERISA preempts Guccione's severance claim (Ans. ¶ 61). PMG, Bell and Staton also asserted three counterclaims: (1) that Guccione wrongfully converted the townhouse property for his own benefit (Ans. ¶¶ 67-80); (2) that Guccione diverted funds from GMI for his own benefit (Ans. ¶¶ 81-104); and (3) that Guccione breached his fiduciary duty to GMI's debtors through "willful misconduct and self-dealing" in authorizing and executing transfers of funds from GMI for his own benefit (Ans. ¶¶ 105-109).

II. Analysis

PMG, Bell and Staton assert that their removal of this action was proper for two reasons: (1) Guccione's severance claim is governed by ERISA, which provides federal courts with original jurisdiction over claims by a participant of an "employee welfare benefit plan" who seeks to "recover benefits due to him under the terms of his plan" (see 29 U.S.C. § 1132(a)(1)(B) and (e)(1); 29 U.S.C. § 1002(1)); and (2) the question of whether Guccione has a cognizable

4

claim for severance requires interpreting GMI's bankruptcy reorganization plan. Guccione asserts that neither ground supports federal jurisdiction and that the case should therefore be remanded to state court.

1. ERISA Does Not Provide Federal Jurisdiction Over Guccione's Severance Claim

The United States Court of Appeals for the Second Circuit has held that federal courts have original jurisdiction to hear claims based on an unfunded program to pay severance benefits if that program constitutes an "employee welfare benefit plan" within the meaning of ERISA. See Tischman v. ITT/Sheraton Corp., 145 F.3d 561, 566-67 (2d Cir. 1998); see also 29 U.S.C. § 1132(a)(1)(B) and (e)(1). Whether a severance program constitutes an "employee welfare benefit plan" pursuant to ERISA depends upon whether that program "requires an ongoing administrative program to meet the employer's obligation." Fort Halifax Packaging Co. v. Coyne, 482 U.S. 1, 11, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987); see also James v. Fleet/Norstar Fin. Group, Inc., 992 F.2d 463, 467 (2d Cir. 1993) (an employer's plan to give severance benefits to employees who stayed on until closing of office did not constitute an "employee welfare benefit plan" because "the nature of the payments did not require an ongoing administrative employer program to effectuate them").

The Second Circuit has stressed that "[a] program that simply pays 'a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation,' and is not a 'plan' under ERISA." Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706, 736-37 (2d Cir. 2001) (quoting Fort Halifax, 482 U.S. at 12). Even if an employee decides to receive his or her severance benefits in installments over time as opposed to in a lump sum, ERISA is not invoked unless the plan requires establishing "a uniform administrative scheme, which provides a set of standard procedures to guide processing

5

of claims and disbursement of benefits." James, 992 F.2d at 466-67. For ERISA to apply, administering the severance plan typically must require "managerial discretion," which the Second Circuit has defined as "where the undertaking could not be fulfilled without ongoing, particularized, administrative analysis of each case." Kosakow, 274 F.3d at 737.

Here, Guccione's fifth cause of action alleges that GMI had a severance program that paid terminated employees one month's salary for every year that an employee worked for the company ten years or longer. Such a program, if it existed, does not require "ongoing, particularized, administrative analysis of each case" and does not give those who administer the program any discretion at all. Rather, the severance program alleged by Guccione requires only simple, one-time arithmetical calculations to determine the amount due to a severed employee and then to pay that amount in a lump sum. This is not the kind of ongoing administrative scheme that is covered by ERISA. See Friedensohn v. Prodigy Services Corp., No. 97 Civ. 3571, 1998 WL 426793, *4 (S.D.N.Y. July 27, 1998) ("[A]lthough payments under the severance arrangement offered by [defendant] might need to be calculated individually for each employee, such simple arithmetic calculations are not of the sort requiring managerial discretion necessitating the creation of an administrative scheme."). Thus, ERISA does not give rise to federal jurisdiction here.

2. The Equities Weigh in Favor of Remand Pursuant to 28 U.S.C. § 1452(b)

Section 1452(a) of Title 28 of the United States Code allows a party to remove a pending state proceeding to a district court "if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334 provides "original but not exclusive jurisdiction of all civil proceedings arising under [T]itle 11 [of the United States Code], or

arising in or related to cases under [T]itle 11." 28 U.S.C. § 1334. Title 11 of the United States Code contains the United States Bankruptcy Code.

Courts generally agree that federal jurisdiction pursuant to section 1334 shrinks once bankruptcy plan confirmation has occurred. See, e.g., In re Kassover, 336 B.R. 74, 78-79 (S.D.N.Y. 2006); In re General Media, Inc., 335 B.R. 66, 73 (S.D.N.Y. 2005); North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp., 143 F.2d 938, 940 (2d Cir. 1944). "Consequently, a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements. First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute." In re Kassover, 336 B.R. at 79 (citing In re General Media, Inc., 335 B.R. at 73); see also In re Resorts International, Inc., 372 F.3d 154, 168-69 (3d Cir. 2004).

Both requirements are met here. First, the requisite "close nexus" exists because GMI's bankruptcy reorganization plan specifically addresses the severance policies at issue here. Article VII, Paragraph 7.3, of the plan provides:

> All employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of each Debtor applicable to its directors, officers or employees, including, without limitation, all savings plans, retirement plans, health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans are treated as executory contracts under the Plan and are hereby rejected pursuant to Section 365(a) of the Bankruptcy Code.

(Ex. B to Defs.' Response to Court's Order to Show Cause ("Ex. B") at 22.) The reorganization plan also states that on the effective date, "all such Claims against, and Interests in, the Debtors shall be satisfied, discharged, and released in full and … all persons shall be precluded from

7

asserting against the respective Reorganized Debtors, their successors, or their assets or properties any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature occurring prior to the Confirmation Date." (Art. IX ¶ 9.2, Ex. B at 24.)

Given the language and scope of these provisions, adjudicating Guccione's severance claim will require determining whether that claim is precluded by the reorganization plan. This dispute therefore affects the interpretation of the plan, which is all that is necessary to satisfy the "close nexus" requirement for jurisdiction. See In re Resorts International, Inc., 372 F.3d at 168-69 ("when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan … retention of post-confirmation jurisdiction is normally appropriate"); In re Nat'l Gypsum Co., 219 F.3d 478, 479, 493 (5th Cir. 2001) (assuming bankruptcy court jurisdiction over a post-confirmation proceeding involving a settlement trust where the court had to interpret the plan of reorganization in order to resolve a dispute).

Guccione asserts that disposition of this action does not hinge on interpreting the reorganization plan because "Plaintiff was not terminated, and therefore had no claim for severance, as of the time the Plan was confirmed." (Pl.'s Reply Mem. at 9.) The timing of Guccione's dismissal is irrelevant, however, because Article VII of the reorganization plan is not limited to extinguishing severance claims that were extant at the time of confirmation, but rather rejects "[a]ll employment and severance practices and policies, and all compensation and benefit plans." (Art. VII ¶ 7.3, Ex. B at 22.) Thus, to resolve Guccione's severance claim, the Court must determine whether GMI's severance policy, which Guccione alleges "had been in effect for decades" (Compl. ¶ 11), was nullified by the reorganization plan.

The second jurisdictional requirement – that the plan provide for the retention of jurisdiction over the dispute – is also met because the reorganization plan expressly provides for retention of jurisdiction over the dispute. Article XI of the plan states: "The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to … the Bankruptcy Code and for, among other things, … [t]o hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan." (Art. XI ¶ I, Ex. B at 25-26.)

PMG, Bell and Staton were therefore entitled to remove this case to federal court. See 28 U.S.C. § 1452(a). However, the statute providing for removal pursuant to bankruptcy jurisdiction also grants courts discretion to remand such cases on equitable grounds. See 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. . . . An order entered under this subsection remanding a claim or cause of action . . . is not reviewable by appeal or otherwise by the court of appeals . . . .").

Courts in this district look to the following non-exclusive list of factors in determining whether equitable remand is appropriate: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." Farace v. Pereira, No. 04 Civ. 1880, 2004 WL 1638090, *6-7 (S.D.N.Y. July 22, 2004) (citing Drexel Burnham Lambert Group v. Figilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y. 1991)).

Applied here, these factors tilt heavily in favor of remand.  First, the outcome of this action will have no effect whatsoever on the administration of the bankruptcy estate.  See In re General Media, Inc., 335 B.R. 66 (S.D.N.Y. 2005) ("the outcome of a post-confirmation proceeding cannot affect the estate."); In re Craig's Stores of Texas, Inc., 266 F.3d 388, 390 (5th Cir. 2001) (after confirmation, the bankruptcy estate "ceases to exist").

Second, state law issues overwhelmingly predominate.  At best, only Guccione's severance claim invokes issues of federal law, whereas the remaining ten claims will require interpreting and applying New York law in regard to breach of contract, fraud, promissory estoppel, unjust enrichment, conspiracy to defraud and breach of fiduciary duty.  See In re 9281 Shore Road Owners Corp., 214 B.R. 676, 696 (E.D.N.Y. 1997).  In addition, the three counterclaims asserted by the removing defendants are grounded exclusively in state law – and identical or nearly identical claims against Guccione were dismissed last year by the bankruptcy court for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  See In re General Media, Inc., 335 B.R. at 71, 76-77 (claims against Guccione for conversion of townhouse property, diversion of funds from GMI and breach of fiduciary duties were dismissed because they did not "arise under the [bankruptcy] Plan or require the Court to interpret it.").

Third, comity considerations favor remand.  See In re 9281 Shore Road Owners Corp., 214 B.R. at 696 ("It is well settled that comity considerations dictate that federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate.").  Fourth, other than the need to interpret one aspect of the confirmation plan, this action is entirely unrelated to the main bankruptcy case.  See Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, No. 04 Civ. 708, 709 & 710, 2004 WL 1048239, *6 (S.D.N.Y. May 7, 2004) (remanding case to state court pursuant to 28 U.S.C. § 1452(b) in part because "the issues in the case are remote from the

bankruptcy proceedings"). Fifth, Guccione has demanded a jury trial and the removing defendants have indicated that they may seek a transfer of the case to the Bankruptcy Court (see Defs.' Response to Court's Order to Show Cause at 12 n.1), where a jury trial can be held only if the bankruptcy judge is "specially designated" to do so and only if all parties consent. See 28 U.S.C. § 157(e).

Taken together, these factors far outweigh the limited federal interest in adjudicating Guccione's severance claim. Accordingly, this action is remanded to the New York State Supreme Court, New York County, pursuant to 28 U.S.C. § 1452(b).

Dated: New York, New York
July 20, 2006

SO ORDERED:

*[signature]*

Sidney H. Stein, U.S.D.J.

11